UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPARKLE MOODY,<br><br>   Plaintiff,<br><br>  v.<br><br>COLE PRICCIO, et al.,<br><br>   Defendants. | Case No. 23-cv-01621-TSH<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 57 |

## I. INTRODUCTION

Pending before the Court is a motion for summary judgment brought by Defendants City of San Leandro and Cole Pricco.[1] ECF No. 57. Plaintiff Sparkle Moody filed an Opposition (ECF No. 63) and Defendants filed a Reply (ECF No. 66). For the reasons stated below, the Court **GRANTS** the motion.[2]

## II. BACKGROUND

On April 4, 2021, Moody and her family were finishing dinner in their duplex home late in the evening when they were interrupted with a strobing, flashing light shining through their kitchen window. Compl. ¶ 8, ECF No. 1; Defs.' Response to Pl.' Separate Statement of Facts, ECF No. 66-1, Fact No. 66. A uniformed police officer, later identified as Defendant Pricco, had shined a flashlight into Moody's window. Compl. ¶ 9; Pl.'s Resp. to Defs.' Separate Statement of Facts, ECF No. 63-1, Fact. No. 12. Moody opened the back door and Pricco informed her of a

---

[1] It appears that Plaintiff erroneously sued Officer Pricco as Officer Priccio. *See generally* Mot.
[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 5, 9. The complaint initially included two claims against Tiffany Ancona. Compl. ¶¶ 39-45. District Judge Susan Illston granted Plaintiff's motion to voluntarily dismiss the claims against Ancona. ECF No. 31. Judge Illston then referred the case to the undersigned magistrate judge, as all remaining parties had consented to a magistrate judge. ECF No. 36.

noise complaint by her neighbor, upstairs tenant Tiffany Ancona.  Pl.'s Response to Defs.' Separate Statement of Facts, Fact Nos. 1–3, 13, 14.  Pricco asked Moody to turn the volume of her music down so that Ancona's children could sleep.  *Id.*, Fact No. 14.  Moody said she would "think about it" and shut the door.  *Id.*, Fact No. 16; Body-worn camera footage of Officer Cole Pricco ("Body Camera Footage") at 2:14-2:26, Ex. F to Decl. of Joanne Tran (ECF No. 57-2).  Pricco attempted to get Moody's attention again by shining his flashlight in her window and tapping on the window.  Pl.'s Response to Defs.' Separate Statement of Facts, Fact No. 18.

       Moody headed toward the front door and walked onto her front porch, where Ancona said, "she hit me."  Defs.' Response to Pl.'s Separate Statement of Facts, Fact Nos. 67, 68.  Ancona had her phone camera out and was recording video.  Compl. ¶ 10; *see generally* Ex. H to Tran Decl. ("Ancona Cell Phone Video").  Pricco then walked onto the front porch, grabbed Moody's hands and placed them behind her back.  Defs.' Response to Pl.'s Separate Statement of Facts, Fact No. 69.  Pricco took Moody to the ground, placed Moody in a prone position on her stomach and pressed his knee in her back.  *Id.*, Fact No. 70; Compl. ¶ 13.  Moody resisted Pricco's attempts to place her into handcuffs.  Pl.'s Response to Defs.' Separate Statement of Facts, Fact Nos. 40, 42.  Pricco was ultimately able to place handcuffs on Moody after pulling Moody to the ground and placing a knee across Moody's buttocks and lower back.  *Id.*, Fact No. 45.  Moody was then placed in a police vehicle by Pricco and another officer who arrived on scene as Pricco was handcuffing Moody.  *Id.*, Fact Nos. 50–55.

       Moody was placed under arrest for battery, resisting and obstructing a police officer, and public intoxication.  *Id.*, Fact No. 59.  Moody was later transported to Santa Rita Jail, where she was examined by a jail nurse.  *Id.*, Fact No. 60.  Moody contends she was held in custody for at least ten hours before she was released from Santa Rita Jail on April 5.  *Id.*, Fact No. 62.  On April 8, 2021, Moody received a call informing her that all her criminal charges had been dismissed.  Compl. ¶ 19; *see also* Dep. of Cole Pricco at 56, ECF No. 57-7.

       A few days after she was released from Santa Rita jail, Moody went to the emergency room to seek treatment for injuries to her lower back and knees.  Pl.'s Response to Defs.' Separate Statement of Facts, Fact No. 64.  Moody was diagnosed with a contusion and bruising to her back

1    and knees, which resolved after several weeks. *Id.*, Fact No. 65. Moody also alleged emotional

2    distress as a result of the incident. Compl. ¶ 20.

3           Moody filed this case on April 4, 2023, alleging two causes of action for damages under 42

4    U.S.C. § 1983 (excessive force and false arrest in violation of the Fourth Amendment) against San

5    Leandro and Pricco, and two state claims (negligence and false report) against Ancona. Compl. at

6    1–2, 7 (Prayer for Relief). On June 25, 2023, Moody filed a motion to voluntarily dismiss her

7    claims against Defendant Ancona. ECF No. 20. On September 28, 2023, the Court granted

8    Plaintiff's motion to voluntarily dismiss her claims against Ancona without prejudice, leaving

9    Plaintiff's Section 1983 claims against Defendants the City of San Leandro and Officer Pricco.

10   ECF Nos. 31. The Court also granted a stipulation to dismiss Moody's Fourteenth Amendment

11   claims against Pricco and the City of San Leandro pursuant to Federal Rule of Civil Procedure

12   41(a)(1)(A)(ii). *Id.*

13          On September 27, 2024, Defendants brought the instant motion, seeking summary

14   judgment on all of Plaintiff's claims. ECF No. 57. On October 11, Moody filed her initial

15   opposition. ECF No. 61. On October 13, Plaintiff filed a notice of errata to correct a misfiled

16   draft (ECF No. 64) and refiled her Opposition. ECF No. 63. On October 18, Defendants filed

17   their Reply. ECF No. 66.

### III.   LEGAL STANDARD

19          Summary judgment is proper where there is "no genuine dispute as to any material fact and

20   the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving

21   for summary judgment bears the initial burden of identifying those portions of the pleadings,

22   discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*

23   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome

24   of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a

25   reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477

26   U.S. 242, 248 (1986).

27          If the moving party meets its initial burden, the opposing party must then set forth specific

28   facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S.

at 250.  All reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).  However, it is not the task of the Court "'to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden "to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (The nonmoving party "must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.") (citations omitted).  Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.") (citations omitted).

"While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (citing Fed. R. Civ. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.")).  If the nonmoving party fails to identify such evidence, or if it offers evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (citations omitted).

### IV.     DISCUSSION

**A.     Section 1983 Claims Against City of San Leandro**

The City of San Leandro seeks summary judgment as to Plaintiff's Section 1983 claims. "[A] municipality cannot be held vicariously liable under section 1983 for the acts of its employees.  Under *Monell*, a municipality may be liable only if the alleged constitutional violation was committed pursuant to an official policy, custom or practice." *Lelaind v. City & Cnty. of San*

4

*Francisco*, 576 F. Supp. 2d 1079, 1088-89 1093 (N.D. Cal. 2008) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978)).

The City argues Plaintiff does not have evidence that Officer Pricco's alleged false arrest or use of excessive force were the result of a policy or practice of the City of San Leandro. Plaintiff does not dispute this and maintains her Section 1983 claims for violation of the Fourth Amendment do not include claims against the City of San Leandro. Opp'n at 3, ECF No. 63. Plaintiff names the City of San Leandro as a defendant in this litigation (Compl. at 1–2), and Plaintiff refers to the plural "Defendants" in her Section 1983 claims. Compl. ¶¶ 21–38. However, Plaintiff did not actually name the City as a defendant in either of her Section 1983 claims, nor did she allege any basis for municipal liability under Section 1983. *Id.* Further, her opposition brief expressly states: "Plaintiff's first and second causes of action for violation of the Fourth Amendment false arrest and excessive force does not include claims against the City of San Leandro. In essence, no *Monell* claims have been made in this case." Opp'n at 3.

Accordingly, the Court **GRANTS** Defendant City of San Leandro summary judgment as to Plaintiff's Section 1983 claims against the City.

**B.     Fourth Amendment False Arrest Claim Under Section 1983 (Second Claim for Relief)**

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). "Probable cause is an objective standard." *Id*. "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). "Conclusive evidence of guilt is not necessary to establish probable cause." *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984). However, "[m]ere suspicion, common rumor, or even strong reason to suspect are not enough" to establish probable cause. *Id.*

Defendants offer three reasons why Pricco had probable cause to arrest Moody. First, they

say probable cause supported Moody's arrest for battery. Mot. at 9. Second, they say probable cause existed for Moody's arrest for resisting, delaying and obstructing Pricco's investigation. Mot. at 11. Third, they say probable cause supports Moody's arrest for public intoxication. Mot. at 12. The Court considers each basis in turn.

### 1.     Arrest for Assault and Battery

"A warrantless arrest by a peace officer for a misdemeanor is lawful only if the officer has reasonable cause to believe the misdemeanor was committed in the officer's presence." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 920 (9th Cir. 2001) (quoting *Johanson v. Dept. of Motor Vehicles,* 36 Cal.App.4th 1209, 1216 (1995)); *see* Cal. Penal Code § 836(a). However, "a peace officer who accepts delivery of a person following a citizen's arrest is not liable for false arrest or false imprisonment even if the officer determines that there is no grounds for making a criminal complaint." *Arpin*, 261 F.3d at 920. "In considering whether a citizen's arrest was made, the citizen need not use any 'magic words' and arrest 'may be implied from the citizen's act of summoning an officer, reporting the offense, and pointing out the suspect.'" *Id.* (quoting *Johanson,* 36 Cal. App. 4th at 1216–1217). Still, "the federal Constitution requires police officers to have independent probable cause when effectuating a citizen's arrest." *Hopkins v. Bonvicino*, 573 F.3d 752, 774 (9th Cir. 2009). "In establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." *Arpin*, 261 F.3d at 925.

Plaintiff argues that Officer Pricco conducted a warrantless arrest in violation of clearly established law by entering onto Plaintiff's front porch, grabbing her and placing her in handcuffs "upon hearing Alcona making an unsubstantiated claim that Plaintiff struck her in the face." Opp'n at 6. Defendants do not dispute that Officer Pricco did not have a warrant for Plaintiff's arrest. Reply at 4; Defs.' Opp'n to Pl.'s Separate Statement, ECF No. 66-1, Fact No. 82; *see also* Pricco Dep. at 31, ECF No. 57-7. Rather, Defendants contend reasonable suspicion existed to detain Plaintiff, which gave rise to probable cause to arrest Plaintiff for public intoxication and resisting detention, and that no warrant was required to arrest Plaintiff for battery because Officer Pricco accepted a citizen's arrest by Ancona for assault and battery, which Defendants maintain

6

was supported by probable cause. Reply at 9–10; *see* Pricco Dep. at 30:11-14, 31:17-19.

        Defendants attempt in their reply to distinguish between Moody's detention and arrest for public intoxication and resisting detention, which Defendants concede took place before Pricco interviewed any witnesses regarding the alleged assault, and Pricco's acceptance of Alcona's citizen's arrest of Moody, which Defendants maintain took place following an independent investigation of Ancona's claims. Defs.' Opp'n to Pl.'s Separate Statement, ECF No. 66-1, Fact No. 72. But Defendants do not assert in their separate statement of undisputed facts that Pricco's arrest in the police vehicle was for public intoxication and resisting arrest alone. *See generally* Defs.' Separate Statement of Undisputed Facts, ECF No. 57-1. Rather, Defendants state only that "Ancona's citizen arrest of Moody for assault/battery was accepted, and Moody was placed under arrest for battery, resisting and obstructing a police officer, and public intoxication." *Id.*, Fact No. 59. Pricco's body worn camera footage indicates that when Pricco and another officer told Moody – then handcuffed and being placed in the back of a police vehicle – that she was under arrest, the officers did not tell Moody what she was being charged with. Body Camera Footage at 9:16–9:22. The body camera footage Plaintiff offers indicates that Plaintiff believed she was being arrested for hitting Ancona. Plaintiff says while she is being placed in the police vehicle that the officers "didn't see anything happen." *Id.* at 8:44–8:51. While she is in the police vehicle, Plaintiff says that the officers are arresting her "for something that [she] didn't do," (*id.* at 16:06–16:09, 16:21–16:23) and yells "she told you I hit her; I didn't.' *Id.* at 17:41–17:45. Neither Pricco nor any other officer is shown or heard telling Moody that the arrest was for public intoxication and resisting detention and not for hitting Ancona. *See id.* at 7:55-9:35, 15:59-16:25. Viewing this evidence in the light most favorable to Plaintiff, there is a genuine dispute as to whether Moody's initial arrest in the back of the police vehicle was for battery and not only for public intoxication and resisting detention.

        Defendants contend Pricco "reasonably investigated" Ancona's claim that Moody hit her in the face. Mot. at 9. It is undisputed that Moody said "Oh my God, I hit her" after Ancona told Pricco that Moody had just hit Ancona in the face. Plaintiff's Resp. to Defs.' Separate Statement of Facts, Fact No. 31. Moody does not dispute that Pricco "perceived Moody's response as an

7

1  admission to striking Ancona." *Id.*, Fact No. 32.  However, Officer Pricco testified that when he

2  initially detained Moody, he did so not with the intention of arresting Moody, but rather of

3  investigating Ancona's claim that Moody had hit her in the face.  Pricco Dep. at 32–33, ECF No.

4  57-7.

5  Between Moody's initial detention and her arrest, Moody repeatedly maintained that she

6  did not hit Ancona, stating, for example: "I didn't put my hand on her.  That didn't happen.  That

7  didn't happen." (Ancona Cell Phone Video at 1:30), "I didn't hit her in her face" (*id.* at 1:46-1:48,

8  2:00-2:05, 2:16-2:17, 2:26-2:28), "she's lying" (*id.* at 1:48-1:50, 1:54-1:56, 2:15-2:16, 2:19-2:20),

9  "they're lying" (*id.* at 1:52, 1:56, 2:04-2:08, 2:20-2:22, 2:22-2:23), "I never hit her in the face" (*id.*

10  at 1:58-2:00), and "I didn't do it" (*id.* at 2:24-2:25).  Plaintiff offers a declaration averring that

11  before Pricco arrested Moody, he did not interview Moody or any other witnesses or examine

12  Moody or Ancona for signs of injury or fighting.  Decl. of Sparkle Moody ¶ 8, ECF No. 61-2.

13  Plaintiff also offers Pricco's body camera footage in support of her opposition to Defendants'

14  motion.  *See* Ex. A to Decl. of Stanley Goff in Opp'n to Defs.' Mot., ECF No. 63-2 ("Body

15  Camera Footage").[3]  This footage does not show Officer Pricco asking Moody any questions,

16  examining Ancona or Moody for signs of injury or fighting, or interviewing Ancona about her

17  claim at any point before Moody had been detained in the back of a police vehicle.  Body Camera

18  Footage at 9:16–9:21 (officers telling Moody, who is handcuffed in patrol vehicle, that she is

19  under arrest); 10:13–12:20 (Pricco obtaining statement from Ancona's partner, David Gois);

20  12:29–15:10 (Pricco asking Ancona about alleged battery); 16:56 (Pricco asking to see Ancona's

21  video footage).  Although Ancona repeatedly asserted that she had video evidence that Moody had

22  hit her (*see, e.g. id.* at 5:34; Ancona Cell Phone Video at 1:51–1:59), Moody likewise repeatedly

23  stated that Ancona was lying and that the video would not show Moody hitting Ancona in the

24  face.  *See, e.g.*, Ancona Cell Phone Video at 2:16–2:25.  Pricco did not ask to review the video at

25  any point before detaining Moody in the police vehicle and telling her she was under arrest.  *See*

26  Body Camera Footage at 5:25–9:22.

---

[3] The body camera footage offered by Plaintiff in opposition to Defendants' motion is identical to that submitted by Defendants in support of their Motion.  *See* Ex. F to Tran Decl.

Defendants contend Pricco's detention of Plaintiff "took into account the fact that Ancona said she had video evidence," that "Ancona was . . . visibly distraught and on the verge of tears . . . and Pricco knew Moody was hostile and aggressive based on his earlier interactions with her." Mot. at 9. Although Plaintiff does not dispute these contentions (Pl.'s Resp. to Defs.' Separate Statement of Facts, Fact Nos. 20, 29), these considerations do not constitute an independent investigation of Ancona's claim that Moody hit her. Accordingly, the Court finds Plaintiff raises a genuine issue of material fact as to whether Officer Pricco independently investigated Ancona's claim that she was the victim of a crime in accepting Ancona's citizen's arrest of Moody. *See Arpin*, 261 F.3d at 925.

Even if the Court were to accept Defendant's bifurcated timeline of Plaintiff's arrest, in which Pricco accepted Ancona's citizen's arrest for battery several minutes after Moody was detained and told she was under arrest, the Court finds there remains a genuine dispute as to whether Pricco's acceptance of Ancona's citizen's arrest was valid. The body camera footage Plaintiff submits does not show Officer Pricco asking Moody any questions at any point during his purported investigation of Ancona's claim. *See generally* Body Camera Footage. Pricco also only asked to view Ancona's video after Pricco communicated to another officer that Moody was being arrested for a list of charges including "242," referring to the section of the California Penal Code defining "battery." Body Camera Footage at 16:47–16:54; *see* Cal. Penal Code § 242. Viewing the facts in the light most favorable to Plaintiff, there is thus a genuine dispute as to whether Pricco independently investigated Ancona's citizen's arrest of Moody, regardless of whether the arrest for battery had already been effectuated when Moody was detained in a police vehicle.

### 2.  Arrest for Resisting Detention

The Fourth Amendment protects citizens from unreasonable searches and seizures. U.S. Const. amend. IV. However, "[t]he Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 572 U.S. 393, 396 (2014) (citations and quotation marks omitted). The Fourth Amendment requires only that a police officer conducting an investigatory stop have "reasonable suspicion to believe that criminal activity 'may

9

be afoot[.]'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)); *see also Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) ("[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.") (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "Reasonable suspicion" is not a particularly high threshold to meet. *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013). It "'is a less demanding standard than probable cause,' and merely requires 'a minimal level of objective justification.'" *Gallegos v. City of Los Angeles*, 308 F.3d 987, 990 (9th Cir. 2002) (citing *Wardlow*, 528 U.S. at 123); *Navarette*, 572 U.S. at 397 ("Although a mere hunch does not create reasonable suspicion, . . . the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause."). Courts must assess "the totality of the circumstances," permitting officers to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Valdes-Vega*, 738 F.3d at 1078 (quoting *Arvizu*, 534 U.S. at 273); *Navarette*, 572 U.S. at 397.

"[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York,* 445 U.S. 573, 586 (1980). "Because the curtilage is part of the home, searches and seizures in the curtilage [of a home] without a warrant are also presumptively unreasonable." *United States v. Perea-Rey*, 680 F.3d 1179, 1184 (9th Cir. 2012).

Plaintiff argues Pricco's initial detention of Plaintiff was unlawful because it took place on Plaintiff's front porch, which was within the curtilage of Plaintiff's home. Opp'n at 3–5. Plaintiff contends that because the initial detention was unlawful, Pricco lacked probable cause to arrest Plaintiff for resisting, delaying and obstructing Pricco's detention of Plaintiff. Opp'n at 4–5. Defendants contend reasonable suspicion existed to detain Plaintiff, which gave rise to probable cause to arrest Plaintiff for public intoxication and resisting detention. Mot. at 11.

The front porch is part of the curtilage of a person's home. *Florida v. Jardines*, 569 U.S. 1, 7 (2013); *see also United States v. Lundin*, 817 F.3d 1151, 1158 (9th Cir. 2016) (holding "[t]he presumption against warrantless searches and seizures would be of little practical value if the

10

State's agents could stand in a home's porch or side garden and trawl for evidence with impunity") (citation and internal quotation omitted). However, "[t]he Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006). Defendants assert that Pricco's detention of Moody on the front porch and subsequent arrest for resisting detention were lawful because Ancona, a tenant of the duplex, explicitly invited Pricco onto the porch. Reply at 4-5.

The Court finds Plaintiff fails to raise a triable issue of fact as to whether Pricco reasonably believed Ancona had authority to consent to Pricco's presence on Plaintiff's front porch. *See Randolph*, 547 U.S. at 106. It is undisputed that Plaintiff's home was a duplex with two units that shared communal front doors, which are accessed through the front porch. Plaintiff's Resp. to Defs.' Separate Statement of Facts, Fact Nos. 3, 23, 24, 68. Ancona told 911 dispatch that she was a resident of the duplex. Ex. B to Tran Decl. ("911 Call") at 1:21-1:27, 1:41-1:52. It is also undisputed that Ancona requested to speak with Officer Pricco at the communal front door to Ancona's and Plaintiff's respective units. Plaintiff's Resp. to Defs.' Separate Statement of Facts, Fact Nos. 3, 23. The Court therefore finds there is no genuine dispute as to whether Pricco's entry onto Plaintiff's front porch was valid. The fact that Pricco's initial detention of Plaintiff took place within the curtilage of her home therefore does not itself give rise to an unlawful arrest claim.

It is undisputed that Plaintiff resisted Pricco's initial detention of her person. Pl.'s Resp. to Defs.' Statement of Facts, Fact Nos. 40, 42. Plaintiff does not argue that her initial detention was not supported by reasonable suspicion or present any other argument for why the detention was unlawful. *See generally* Opp'n. Nor does Moody argue that Pricco would not have had probable cause to arrest Moody for resisting detention if the initial detention was lawful. *See generally* Opp'n. Plaintiff therefore fails to raise a triable issue of fact on the issue of whether Pricco's arrest of Plaintiff for resisting detention was unlawful.

11

### 3. Arrest for Violation of California Penal Code § 647(f)

Officer Pricco arrested Moody for public intoxication. Pricco Dep. at 55:2-4; Plaintiff's Resp. to Defs.' Separate Statement of Undisputed Facts, Fact No. 59. Under California Penal Code § 647(f), a person is guilty of disorderly conduct, a misdemeanor, if the person "is found in any public place under the influence of intoxicating liquor . . . in a condition that they are unable to exercise care for their own safety or the safety of others, or by reason of being under the influence of intoxicating liquor . . . interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way." Cal. Penal Code § 647(f).

#### a. Whether Plaintiff Was Arrested for Intoxication in a Public Place

Plaintiff contends her arrest for public intoxication was unlawful because Officer Pricco arrested Plaintiff on her front porch, which Plaintiff asserts does not qualify as a "public place." Opp'n at 7. The front porch is considered part of the curtilage of a person's home for the purposes of the Fourth Amendment. *See Jardines*, 569 U.S. at 7 (holding "[t]he front porch is the classic exemplar of an area adjacent to the home and to which the activity of home life extends") (quotation omitted). However, California courts have not relied on Fourth Amendment jurisprudence to define a "public place" within the meaning of California Penal Code § 647. Instead, "California courts have defined a public place variously as 'common to all or many; general; open to common use[.]'" *People v. Perez*, 64 Cal. App. 3d 297, 300 (1976); *see also In re R.K.*, 160 Cal. App. 4th 1615, 1619-22 (2008) (collecting cases). Although the precise parameters used to define a "public place" have varied somewhat, California courts have consistently indicated that a front porch qualifies as public space under the meaning of subsection 647(f). *See People v. Olson*, 18 Cal. App. 3d 592, 598 (1971) (area outside in the front of home was "public place" within the meaning of subsection 647(f), "whether it be the driveway, lawn or front porch"); *Perez*, 64 Cal. App. 3d at 301 (holding hallway of apartment building is a "public place" because it is "open to delivery men, service men, solicitors, visitors and other strangers"); *In re R.K.*, 160 Cal. App. 4th at 1621–22 (holding woodshed was not a "public place," in contrast to "areas outside the front of a home such as driveways, lawns, or front porches that are as a general matter open to 'common' or 'general use'") (cleaned up). Accordingly, the Court finds

12

Plaintiff's front porch was a "public place" within the meaning of subsection 647(f), and the fact that Pricco arrested Plaintiff for being intoxicated on her own front porch does not mean the arrest was unlawful.

### b. Whether Plaintiff Was Unable to Exercise Care for Safety of Self or Others

Plaintiff argues that her arrest for public intoxication was unlawful because Defendants lacked probable cause as to the second element of California Penal Code § 647(f), that a person guilty of misdemeanor disorderly conduct be "under the influence of intoxicating liquor . . . in a condition that they are unable to exercise care for their own safety or the safety of others, or by reason of being under the influence of intoxicating liquor . . . interfere[] with or obstruct[] or prevent[] the free use of any street, sidewalk, or other public way." Cal. Penal Code § 647(f).

Plaintiff does not dispute that she "had been drinking to the point of intoxication" when the incident took place, that jail medical records show that she was intoxicated, or that her teenage son said that Moody was drunk while Pricco was trying to detain Moody. Pl.'s Resp. to Defs.' Separate Statement of Facts, Fact Nos. 13, 47, 49, 61. Plaintiff does not dispute that Pricco "noted Moody's behavior and demeanor as extremely hostile and aggressive towards him." *Id.*, Fact No. 20, although Defendant concedes he did not observe Plaintiff engage in any violent acts prior to his attempts to detain her. Defs.' Resp. to Pl.' Separate Statement of Facts, Fact No. 80.

However, Moody offers a declaration in support of her opposition to Defendants' motion, averring: "I was slightly intoxicated, but I was never so intoxicated that I was a harm to myself or others . . . [.]" Decl. of Sparkle Moody in Opposition to Defs.' Mot. ¶ 9, ECF No. 61-2. Plaintiff further avers she "did not have slurred speech, a staggered gait, an odor of an alcoholic beverage emanating from [her] person and breath, or bloodshot, watery eyes." *Id.* ¶ 11; *see* Plaintiff's Resp. to Defs.' Separate Statement of Facts, Fact. No. 34 (disputing Defendants' contention that Moody had slurred speech, a staggered gait, smelled of alcohol and had bloodshot, watery eyes). The Court finds Moody's declaration is based on her personal knowledge, is internally consistent, and relevant to the issue of whether Pricco had probable cause to believe Moody was so intoxicated that she posed a harm to herself or others. Moody's declaration therefore creates a genuine issue

of material fact as to whether Pricco had probable cause to arrest Moody for public intoxication under California Penal Code § 647(f).  *See Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 498 (9th Cir. 2015) (plaintiff's "uncorroborated and self-serving" declaration and deposition testimony were sufficient to establish a genuine dispute of material fact where plaintiff's "testimony was based on personal knowledge, legally relevant, and internally consistent.")

### 4. Conclusion Regarding False Arrest

The determination of whether probable existed to support an arrest is objective.  *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"); *District of Columbia v. Wesby*, 583 U.S. 48, 54 n.2 (2018) ("Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking.").

Here, the Court has found there is no triable question of material fact that Pricco had probable cause to arrest Moody for resisting detention.  The existence of triable questions of material fact on whether he also had probable cause to arrest her for battery or public intoxication is therefore irrelevant because "an arrest is lawful if the officer had probable cause to arrest for any offense," *Wesby*, 583 U.S. at 54 n.2.  Accordingly, Defendants' motion for summary judgment on Plaintiff's Fourth Amendment unlawful arrest claim is **GRANTED**.

## C. Fourth Amendment Excessive Force Claim Under Section 1983 (First Claim for Relief)

"Excessive force during an arrest or seizure, even if the arrest itself is lawful, violates the Fourth Amendment."  *Smith v. City of Marina*, 709 F. Supp. 3d 926, 934 (N.D. Cal. 2024).  "In assessing a claim of excessive force, courts ask whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them.  A court (judge or jury) cannot apply this standard mechanically.  Rather, the inquiry requires careful attention to the facts and circumstances of each particular case." *Lombardo v. City of St. Louis*, 594 U.S. 464, 466–67 (2021) (cleaned up).

Plaintiff identifies the excessive force used as Pricco's entering onto Plaintiff's front porch,

grabbing her hands and placing them behind her back, taking her to the ground and placing her in handcuffs. Opp'n at 8. It is undisputed that Moody experienced injuries as a result of Pricco's use of force. *See* Pl.'s Response to Defs.' Separate Statement of Facts, Fact Nos. 65. Moody was diagnosed with a contusion and bruising to her back and knees, for which she was given ice packs, heating pads, a muscle relaxant and ibuprofen, and which resolved after several weeks. *Id.*

Plaintiff argues that because Pricco's detention of Plaintiff was unlawful in the first instance, a reasonable jury could conclude that the use of any force was not justified. However, as discussed above, the Court finds Plaintiff fails to identify a genuine issue of material fact as to whether there was probable cause to arrest her for resisting detention. Plaintiff makes no argument that Pricco's actions were not objectively reasonable in light of the facts and circumstances he confronted. *See generally* Opp'n. Plaintiff therefore fails to raise a genuine issue of material fact that the force Pricco used was excessive in violation of the Fourth Amendment.

Accordingly, the Court **GRANTS** Pricco summary judgment as to Plaintiff's excessive force claim.[4]

## V. CONCLUSION

Based on the analysis above, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: January 3, 2025

THOMAS S. HIXSON
United States Magistrate Judge

---

[4] Because the Court has granted summary judgment on the merits of Plaintiff's Fourth Amendment claims, it need not reach Defendants' qualified immunity argument.

15